No. 22-10511

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

HOLLIS MORRISON GREENLAW; BENJAMIN LEE WISSINK; CARA DELIN OBERT; JEFFREY BRANDON JESTER,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of Texas (Crim. No. 21-289)
(The Honorable Reed O'Connor, J.)

## APPELLANTS' REPLY IN SUPPORT OF PETITION FOR REHEARING *EN BANC*

Kannon K. Shanmugam
*Counsel of Record*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 223-7300
kshanmugam@paulweiss.com

*Counsel for Hollis Morrison Greenlaw*

James M. Burnham
*Counsel of Record*
KING STREET LEGAL, PLLC
800 Connecticut Ave, N.W.
Suite 300
Washington, DC 20006
(602) 501-5469
james@kingstlegal.com

*Counsel for Cara Obert*

Guy A. Lewis
*Counsel of Record*
THE LAW OFFICES OF GUY A. LEWIS, PLLC
12575 SW 67th Ave
Pinecrest, FL 33156
(305) 442-1101
glewis@lewistein.com

*Counsel for Benjamin Lee Wissink*

Elisha J. Kobre
*Counsel of Record*
BRADLEY ARANT BOULT CUMMINGS LLP
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
(214) 257-9800
ekobre@bradley.com

*Counsel for Jeffrey Brandon Jester*

## INTRODUCTION

The Government basically concedes the panel applied the wrong standard for assessing harmlessness. *See* Resp. 11-12. Rather than ask whether a properly instructed jury could have rationally *"acquit[ted]," United States v. Skilling*, 638 F.3d 480, 482 (5th Cir. 2011) (emphasis added), the panel asked whether a properly instructed jury could have rationally *convicted*, *see* Op. 31. That inversion of the standards for harmlessness and for legally sufficient evidence is critically important, threatens to sow confusion in the law, and warrants rehearing. In addition, the Government's defense of the panel's construction of cash from "operations" and "affiliate" transactions only underscores the unbounded and dangerous nature of the panel's view. That extraordinarily important issue warrants rehearing, too.

### A. The Panel Asked Whether a Jury Rationally *Could Have Convicted.*

The Government argues first that the panel did not mean what it said when *applying* the harmless-error standard because it accurately quoted the more general "beyond-a-reasonable-doubt" harmlessness rule *elsewhere*. Resp. 9. But application is everything, as the opinion demonstrates: The panel relied on its "sufficiency of the evidence analysis" to conclude "there was substantial evidence from which a jury could find beyond a reasonable doubt that the object of Appellants' scheme was money." Op. 31. Only *after* applying that plainly incorrect standard did the panel conclude "[a]ccordingly"—a word which means for that

reason—"beyond a reasonable doubt that the jury would still have found" Appellants had intent to defraud. *Id.* 31-32. The panel's *sole justification* for this conclusion was its sufficiency-of-the-evidence analysis. The opinion's conflation of those very different analyses was error.

The Government also points to a line in the opinion about the evidence being "overwhelming." Op. 31. But it never addresses the key point—that evidence may be "overwhelming" for *sufficiency purposes* (one of the lowest evidentiary standards in appellate practice) while still being inadequate to establish *harmlessness* (one of the highest). *See, e.g.*, *United States v. Takhalov*, 827 F.3d 1307, 1322 (11th Cir. 2016), *opinion modified* 838 F.3d 1168. The opinion simply has not performed the rigorous harmlessness analysis that the law requires where (as here) the jury received incorrect instructions.

It also makes no difference which part of *United States v. Stanford* the panel intended to invoke. 823 F.3d 814 (5th Cir. 2016); *see* Resp. 10-11. Both formulations of the harmless-error inquiry in *Stanford* echo *Neder v. United States*'s admonition to ask whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." 527 U.S. 1, 18 (1999). And because it must be clear beyond a reasonable doubt, a court cannot hold that a rational jury would have convicted if there was evidence from which it could have rationally acquitted. *See id.* at 19. So as *Neder*, *Skilling*, and countless other

decisions have held, the ultimate question remains whether a properly instructed jury rationally could have acquitted. *See* Pet. 7-8 & n.2. If it *could have*, the error is not harmless. This is long-settled law.

Even the Government essentially concedes the error, though it minimizes the problem as quibbling over a single word—"could" versus "would." Resp. 11-12. But those words have dramatically different consequences. Acknowledging that a rational person "*could*" have convicted (sufficiency) obviously does not require finding beyond a reasonable doubt that a rational person "*would*" have convicted (harmlessness). Conflating these entirely distinct analyses would make every instructional defect harmless as a matter of law, as the Court reaches instructional errors only *after* it has deemed the evidence sufficient. That error will thus create confusion on an oft-recurring issue and is extraordinarily important. It amply warrants rehearing.

**B. The Correct Standard for Harmlessness Is Well-Established.**

The Government next accuses Appellants of advancing an extreme standard for harmlessness that deviates from precedent, Resp. 2, 14-17, and faults us for invoking a "sufficiency-review-in-reverse" approach wherein a court reviews the record to determine whether a rational jury could have "reached a contrary verdict," *id.* at 15. But far from novel, that standard has been settled law *in this circuit* (and every other) for decades. *Skilling* itself holds that under *Neder* a reviewing court

"asks whether the record contains evidence that could rationally lead to an acquittal with respect to the valid theory of guilt." 638 F.3d at 482 (brackets omitted). Countless other decisions agree, *see United States v. Bays*, 680 F. App'x 303, 309 (5th Cir. 2017); Pet. 8 n.2 (collecting cases), and the prosecution's confusion about the proper standard for harmlessness only further underscores the need for rehearing.

The Government then attacks a standard Appellants do *not* advance. It notes that in *Skilling* and *United States v. Barraza*, 655 F.3d 375 (5th Cir. 2011), this Court rejected the theory that to demonstrate harmlessness, the Government had to "show that the valid theory was the *only* factually supportable basis on which the jury could have convicted." *See* Resp. 15 (quoting *Skilling*, 638 F.3d at 482). The Government contends that sort of harmful-if-impossible-to-tell-what-the-jury-relied-on approach is no longer the law. *Id.* at 16-17 (citing *Skilling*, 638 F.3d at 482 n.1).

But that is not Appellants' argument: What matters for harmlessness is not whether the valid path to guilt was the only one the evidence supported, or whether this Court can definitively determine which path the jury took. What matters—as *Skilling* says—is whether the evidence could have possibly led to *acquittal* "with respect to the valid theory of guilt." 638 F.3d at 482 (emphasis added). The panel correctly focused on the valid theory of guilt (*i.e.*, whether Appellants intended to deprive investors of money or property), but incorrectly deemed the instructional error harmless because it was *possible* for a rational jury to convict under it.

**C. The Instructional Error Was Not Harmless.**

The Government also argues rehearing is unwarranted because the instructional error in this case was harmless even under the proper standard. Resp. 12-14. It compares the record to *Skilling* and *Barraza*, and insists that—like in those cases—the prosecution focused on the valid theory of guilt at trial and "made no argument reinforcing the invalid theory." Resp. 12. Wrong on all points.

First, the Government's claim to have focused on deprivation of money or property smuggles in a complex-and-contested view of deprivation that the panel took pains to *not* adopt. The panel avoided resolving whether the mere payment of money in exchange for equivalent value—*i.e.*, exchanges where buyers get what they pay for—"deprives" anyone of anything. The panel reasoned instead that the jury could have concluded investors bought into a business less valuable than advertised. *See* Op. at 18-21 & n.10. The Government gave little attention, if any, to *that* theory at trial. It did not attempt to assess the economic value of *any* disputed transactions, and it did not introduce *any* direct evidence about the overall value of UDF's business. *See* ROA.9356-59, 9365-67, 9478-79, 10132. "Cheated" investors were simply not a focus below.

What the Government *did* press at trial was a deceit-only theory of guilt. Its key witness disclaimed considering the "economic benefits" of the disputed transactions. ROA.9358-59. And after Appellants noted the Government's failure

to prove investors got less value than they paid for, the prosecution told the jury that the economic terms of the disputed transactions were a "technicalit[y]" that "doesn't matter." ROA.10132. Nor does it matter that the prosecution stated a correct definition of "scheme to defraud" once in closing. Resp. 14. The definition of that (separate) element was erroneous in the *instructions*, ROA.7024, 7032, 10024-25, 10035, which "juries are presumed to follow," *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009). And a properly instructed jury may well have concluded Appellants did not intend to cheat anyone.

Second, the Government brushes aside Appellants' testimony by claiming the jury "obviously rejected" it, Resp. 16, and arguing that defendant testimony cannot automatically defeat harmlessness, *id.* (citing *United States v. Montgomery*, 747 F.3d 303, 310-11 (5th Cir. 2014)). But as the panel recognized, an intent to *deceive* and an intent to *cheat* are two different things. *See* Op. 16-17, 28-30. When evaluating Appellants' testimony, the jury was tasked with assessing *only* the former. The jury may thus have gone no further than disbelieving Appellants' claims of truthfulness—especially given the absence of evidence showing actual intent to harm investors' property interests.

Nor does *United States v. Montgomery* move the needle. There, the court reviewed the rejection of a *defendant's proposed instruction*, not a constitutional claim that the *court's actual instructions* misstated the law by omitting an element

of the crime. *See* 747 F.3d at 308-09. Those sorts of errors are governed by different standards of review, *see United States v. Guevara*, 408 F.3d 252, 257 (5th Cir. 2005), and, most importantly, different standards of harmlessness, *see United States v. John*, 309 F.3d 298, 304 (5th Cir. 2002) (whether failure to give requested instruction "seriously impaired the defendant's ability to effectively present a given defense"). *Montgomery*'s assessment of defendant testimony thus does not govern the *Neder* harmlessness inquiry, which *Montgomery* never even purported to apply.

And it would indeed be extraordinary for a court to conclude, applying *Neder*, that the omission of an *intent* element was harmless even in the rare case when the defendant testified to lacking that intent. The harmlessness inquiry asks only whether the evidence "could rationally" lead to acquittal, *Skilling*, 638 F.3d at 482, and "the credibility of a witness and the weight of the evidence is the exclusive province of the jury," *United States v. Ford*, 558 F.3d 371, 376 (5th Cir. 2009) (per curiam); *see id.* (Courts are "bound to accept a jury's credibility determinations unless the challenged testimony is so unbelievable on its face that it defies physical laws."). But even if a court could reach that conclusion in an extreme case, it could not do so here: ample evidence supported the soundness of UDF's business model and that Appellants did not intend to harm investors. *See* Pet. 11.

The panel's error was thus outcome-determinative in addition to being extraordinarily important. This Court should grant rehearing to correct it.

### D. The Panel's Construction of Common Accounting Terms is Unbounded.

The Government's Response illustrates the problem with the panel's approach to the terms cash from "operations" and "affiliate" transactions. The Government acknowledges that every dollar received by UDF III in the disputed transactions came "as a loan payment from the borrower," and that every dollar sent by UDF V in the disputed transactions went as "advances on loans" to "borrower-developers." Resp. 4. In so many words, then, the Government recognizes that Appellants complied with the plain meaning of these terms. But the Government argues the jury was permitted to deem the common-borrowers meaningless "window dressing," view the transactions as being between affiliated UDF entities "in substance," and find that UDF III's income from loan repayments was somehow not cash from its operations. *Id.* at 18. In the Government's view, it was "how Appellants *used* their contractual rights" that transformed the configuration of parties to the transactions. *Id.*

There is, again, not a shred of evidence or authority suggesting that these common accounting terms include some sort of "substance" versus "form" distinction in which contractual counter-parties cease to exist when one of the parties possesses strong contractual rights. The Government simply asked—and the panel permitted—the jury to ignore the actual parties to the actual transactions in favor of imaginary configurations of parties in nonexistent transactions that comported with

the Government's theories about each transaction's *real* purpose. That unmoored construction of these previously precise accounting terms will, if left in place, enable prosecutors to bring fraud claims against untold numbers of law-abiding businesses. Rehearing is warranted on that basis, too.

## CONCLUSION

The petition should be granted.

September 1, 2023

Respectfully submitted,

*/s/ Kannon K. Shanmugam*
Kannon K. Shanmugam
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 223-7300
kshanmugam@paulweiss.com

*Counsel for Hollis Morrison Greenlaw*

*/s/ James M. Burnham*
James M. Burnham
KING STREET LEGAL, PLLC
800 Connecticut Ave, N.W.
Suite 300
Washington, DC 20006
(602) 501-5469
james@kingstlegal.com

*Counsel for Cara Obert*

*/s/ Guy A. Lewis*
Guy A. Lewis
THE LAW OFFICES OF GUY A. LEWIS, PLLC
12575 SW 67th Ave
Pinecrest, Florida 33156
(305) 442-1101
glewis@lewistein.com

*Counsel for Benjamin Lee Wissink*

*/s/ Elisha J. Kobre*
Elisha J. Kobre
BRADLEY ARANT BOULT CUMMINGS LLP
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
(214) 257-9800
ekobre@bradley.com

*Counsel for Jeffrey Brandon Jester*

## CERTIFICATE OF SERVICE

I certify that on September 1, 2023, a copy of the foregoing Reply was filed electronically through the Court's electronic filing system with the Clerk. I further certify that all parties required to be served have been served.

Dated: September 1, 2023

/s/ James M. Burnham
James M. Burnham
*Counsel for Appellant Cara Obert*

**CERTIFICATE OF COMPLIANCE**

This Reply complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a) and 32(c)(2), and Fifth Circuit Rule 32.1. The Reply contains 1,950 words and was prepared using Microsoft Word and produced in Times New Roman 14-point font.

Dated: September 1, 2023

/s/ James M. Burnham
James M. Burnham
*Counsel for Appellant Cara Obert*